IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLI GOODNIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-25-475-D |
| | ) |
| JENNIFER M. HAMMONS, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Before the Court is Defendant's Motion to Dismiss, with Brief in Support [Doc. No. 5]. Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## Background

According to Plaintiff's complaint, Defendant Jennifer Hammons "illegally and without authorization" accessed her husband, Christopher Hammons', Apple watch and discovered Plaintiff's nude and sexually suggestive photographs. Defendant then sent text messages to Plaintiff "threaten[ing] [to] blackmail[]" her by exposing the romantic relationship with Mr. Hammons to third parties and the public if "Plaintiff didn't obey[.]"

Defendant "took screenshots" of the "threatening" text messages, including various intimate images, and sent them to Averi Carriger, a legal assistant working in Plaintiff's office. Plaintiff further alleged "[u]pon information and belief," that "Defendant Hammons displayed and/or disseminated Plaintiff's intimate Images to additional third parties."

On June 9, 2024, the situation escalated. Defendant used "stolen passwords" to "hack[]" into Mr. Hammons' email and discover more of Plaintiff's nude or partially nude images. She then "downloaded, screenshotted, screen recorded, and/or transferred" the images to her personal device and "displayed/disseminated them to third parties."

Between July 2024 and February 2025, Plaintiff "received unprecedented attention from strangers on social media," receiving more than 600 new "friend requests" and over 50 direct messages.[1]

Plaintiff states that she has suffered "emotional and psychological injuries resulting from Defendant Hammons's conduct[.]" She brings the following five claims: (1) violation of 15 U.S.C. § 6851 for disclosure of intimate images; (2) violation of Okla Stat. tit, 21 § 1040.13b (which Plaintiff argues provides a state-based private cause of action for the nonconsensual dissemination of intimate images); (3) intrusion upon seclusion / invasion of privacy, (4) public disclosure of private facts; and (5) intentional infliction of emotional distress.

## Standard of Decision

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court will accept as true all well-pled factual allegations and construe them in the light most favorable to Plaintiff. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010).

---

[1] After learning of Defendant's behavior, Mr. Hammons confronted Defendant, asking her to delete the images. Defendant allegedly responded, "Fuck you, I'm gonna use these to my advantage," in an apparent reference to "pending divorce negotiations."

2

A complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but it does need "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action" does not provide grounds of a party's entitlement to relief. *Twombly*, 550 U.S. at 555.

"[T]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 558 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (citation omitted)). Courts may "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## Analysis

The Court addresses each of the complaint's causes of action in turn.

1. *Claim 1 – 15 U.S.C. § 6851*

15 U.S.C. § 6851 provides a private cause of action for a person whose "intimate visual depictions" are disclosed "by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure[.]" 15 U.S.C.

§ 6851(b)(1)(A).² The statute allows for certain exceptions—such as disclosures to law enforcement, disclosures related to investigating "unsolicited or unwelcome conduct[,]" and disclosures about a matter of public concern or public interest. 15 U.S.C. § 6851(b)(4).

In her motion, Defendant characterizes the complaint as consisting of "speculative information" and "naked assertions" that lack sufficient "factual enhancement" to allow the Court to draw "any inferences at all, let alone reasonable ones." For example, Defendant states the complaint lacked sufficient detail to draw the inference that Plaintiff's images were of an intimate nature because the complaint did not describe which body parts were exposed or if Plaintiff was recognizable in certain photos. She further argues that her conduct is best understood as the investigation of "unwelcome conduct"—i.e. Mr. Hammons' adultery. *See* Motion [Doc. No. 5 at p. 13] (citing 15 U.S.C. § 6851(6)(4)(B)(iv)(II)). In the alternative, Defendant asserts the alleged disclosures were about a matter of public concern because Plaintiff and Mr. Hammons are members of the Oklahoma Bar Association and subject to the Rules of Professional Conduct. *See* Motion [Doc. No. 5 at p. 15] (citing § 6851(b)(4)(C)).

---

² The intimate visual depiction must also be disclosed in a manner "in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce[.]" 15 U.S.C. § 6851(b)(1)(A). Moreover, "consent" is defined. 15 U.S.C. § 6851(a)(2) ("The term 'consent' means an affirmative, conscious, and voluntary authorization made by the individual free from force, fraud, misrepresentation, or coercion."); *see also* 15 U.S.C. § 6851 (b)(2) ("(A) the fact that the individual consented to the creation of the depiction shall not establish that the person consented to its distribution; and (B) the fact that the individual disclosed the intimate visual depiction to someone else shall not establish that the person consented to the further disclosure….").

The Court finds each of Defendant's arguments unpersuasive. The "unwelcome conduct" exception in § 6851 applies where an individual is the involuntary recipient of unsolicited intimate images.³ To argue that the exception applies to the unwelcome discovery of a romantic partner's infidelity removes the provision from its context. *See United States v. Burkholder*, 816 F.3d 607, 615 n.6 (10th Cir. 2016) ("[It] is a fundamental canon of statutory construction that the words of a statute must be read in their *context* and with a view to their place in the overall statutory scheme."). Similarly, the "public concern" exception most appropriately applies to situations where an intimate image is newsworthy, but the intimate character of the image is incidental. For example, "Napalm Girl"—which is a photo depicting a 9-year-old whose clothes were tragically burned off in a bombing during the Vietnam War—qualifies. 15 U.S.C. § 6851(b)(4)(C); *see* Meghan Fay*, The Naked Truth: Insufficient Coverage for Revenge Porn Victims*, Note, 59 B.C. L. Rev. 1839, 1859 n.153 (2018)); *see also City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004) (defining "public concern" in the context of constitutionally protected speech as "something that is a subject of legitimate news interest[.]"). To rule that common infidelity amounts to a statutorily qualifying "public concern"—especially where disclosures were not sent to the Oklahoma Bar Association—would create an exception that swallows the rule.

---

³ *See* Brenna Cheyne Miller, *Fact or Phallus? Considering the Constitutionality of Texas's Cyber-flashing Law Under the True Threat Doctrine*, 8 Tex. A&M L. Rev., 423, 425-26 (2021) (discussing the issue).

Lastly, the complaint is well-drafted and allows the Court to straightforwardly apply the elements of § 6851 to the facts of the case. Defendant's motion is therefore denied as to this claim.[4]

2. *Claim 2* – Okla Stat. tit, 21 § 1040.13b

Plaintiff argues Okla. Stat. tit, 21 § 1040.13b creates a state-based private cause of action akin to 15 U.S.C. § 6851. Defendant disagrees, arguing § 1040.13b is a purely criminal statute.[5]

Section 1040.13b makes it a felony to engage in the "nonconsensual dissemination of private sexual images" that the defendant:

> "1. Intentionally disseminates …
>
> 2. Obtains … under circumstances in which a reasonable person would know or understand that the image was to remain private; and
>
> 3. Disseminates … without the effective consent of the depicted person." Okla. Stat. tit, 21 § 1040.13b(B).

---

[4] Defendant argues Plaintiff does not have a legitimate expectation of privacy in the allegedly disclosed photographs. [Doc. No. 5 at p. 11] (citing *Slayton v. Willingham*, 726 F.2d 631, 635 (10th Cir. 1984)). The statute, however, does not refer to a "legitimate expectation of privacy," but instead provides a cause of action wherever a disclosing individual has "recklessly disregard[ed] whether[] the [depicted] individual … consented to [the] disclosure" of an intimate image. 15 U.S.C.A. § 6851(b)(1)(A). The Court therefore finds no need to analyze Defendant's argument premised on whether Plaintiff maintained a legitimate expectation of privacy.

[5] The parties do not cite, and the Court has not found, a case recognizing a private cause of action under § 1040.13b. Plaintiff argues *Doe v. Coomes*, No. 21-CV-67-TCK-CDL, 2021 WL 4304692 (N.D. Okla. Sept. 21, 2021) qualifies. A review of the related briefs in that case demonstrates that the issue was not presented to the court. *See id.* (Doc. Nos. 9-10). Furthermore, the district court dismissed the claim under § 1040.13b for failing to meet "the first [and] second required elements" of the possible cause of action. *Id.* at *1. The district court did not address whether the statute conferred a civil cause of action, but only whether it would matter *if* such an action existed according to the facts alleged. The Court therefore finds *Coomes* unpersuasive.

6

Unlike 15 U.S.C. § 6851, section 1040.13b does not explicitly create a private cause of action.

In *Holbert v. Echeverria*, 744 P.2d 960, 963 (Okla. 1987*), partially rev'd on other grounds as recognized in*, *Lee v. Bueno*, 381 P.3d 736, 749 (Okla. 2016), the Oklahoma Supreme Court adopted a three-part test for determining whether "an implied private right of action" exists in a public statute that does not expressly create one. According to the supreme court, "a cause of action [can] be inferred" if:

> "(1) the plaintiff is one of the class for whose *especial* benefit the statute was enacted;
>
> (2) some indication of legislative intent, explicit or implicit, suggests that Congress wanted to create a private remedy and not deny one; [and]
>
> (3) implying a remedy for the plaintiff would be consistent with the underlying purpose of the legislative scheme[.]"

*Id.* at 963 (relying on *Cort v. Ash*, 422 U.S. 66, 78 (1975) (providing for a similar multi-pronged test to determine "whether a private remedy is implicit in a statute not expressly providing one" in the federal context.)). *See also id.* at 963 n. 8-9 (citing "post-*Cort* decisions addressing theprivate [*sic*] right-of-action issue[.]" (citations omitted)).

Applying the *Holbert* test here, the first and third prongs arguably suggest the statute creates an implied cause of action. First, Plaintiff is a member of the class for whose *especial* benefit the statute was enacted. She did not consent to the alleged dissemination of her private images, and none of the statute's enumerated exceptions apply.[6] Concerning

---

[6] *See* Okla. Stat. tit, 21 § 1040.13b(C) ("The provisions of this section shall not apply … when: 1. The dissemination is made for the purpose of a criminal investigation that is

the third factor, it is likely that civil redress would be consistent with the criminal penalty as the former allows for a victim's financial compensation and the latter provides for the retributive and deterrent aims of criminal law. *See Donaldson v. City of El Reno*, 565 P.3d 346, 356 (holding "the traditional aims of [criminal] punishment [are] retribution and deterrence[.]") (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963)).

The dispositive factor is, however, the second prong: legislative intent. *See Holbert*, 744 P.2d at 964 (holding "Supreme Court decisions have placed special emphasis" on the second *Cort* factor); *see also id.* at 964 n.12 (citing *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 535-536 (1984) ("In evaluating such a claim, our focus must be on the intent of Congress when it enacted the statute in question"); *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers,* 453 U.S. 1, 13 (1981) ("The key to the inquiry is the intent of the Legislature"); *Texas Industries, Inc. v. Radcliff Materials,* 451 U.S. 630, 639 (1981) ("Our focus, as it is in any case involving the implication of a right of action, is on the intent of Congress"); *California v. Sierra Club*, 451 U.S. 287, 293 (The "ultimate issue is whether Congress intended to create a private right of action"); *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15 (1979) ("The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction"); and *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979) ("The

---

otherwise lawful; 2. The dissemination is for the purpose of, or in connection with, the reporting of unlawful conduct; 3. The images involve voluntary exposure in public or commercial settings; or 4. The dissemination serves a lawful purpose.").

8

question of the existence of a statutory cause of action is, of course, one of statutory construction")).

To determine legislative intent, the Court looks to the statute's text and, to the extent helpful, its history. *See Holbert*, 744 P.2d at 964 ("[The] text must be scrutinized for any implicit indication of intent to create or deny private redress. Legislative intent is ascertained by looking at the precise wording of the Act and studying its history.").

Nothing in the text of § 1040.13b indicates an intent to create a private cause of action. The statute provides for a criminal penalty only. *See* Okla. Stat. tit, 21 § 1040.13b(G). Moreover, § 1040.56 *does* provide for a private cause of action for victims of certain enumerated crimes in Title 21, but not for victims of § 1040.13b.

Section 1040.56 is titled "Cause of action—Damages—Statute of limitations." *Id.* It reads as follows:

> "Any person who, while under the age of eighteen (18), was a victim of an offense provided for in Section 681, 741, 843.5, 852.1, 867, 885, 886, 888, 891, 1021, 1021.2, 1021.3, 1024.2, 1040.8, 1040.12a, 1040.13, 1040.13a, 1087, 1088, 1111.1, 1114 or 1123 of this title, … may bring a civil action … regardless of whether the victim is now an adult." *Id.*

It is a common principle of statutory construction that where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 558 U.S. 233, 249 (2010). Because Title 21 includes a private cause of action for the above-listed offenses directed at minors but excludes the offense at issue here, the Court is confident that the Oklahoma

legislature did not intend to create a private cause of action for the nonconsensual dissemination of adult private sexual images.

Lastly, although not extensively briefed, the Court notes that § 1040.13b's history provides additional evidence of the law's criminal character. The statute has been amended four times since 2016. *See* 2016 Okla. Sess. Law Serv. Ch. 262 (S.B. 1257) (effective November 1, 2016) ("Subject: Criminal Conduct Relating to Dissemination of Certain Images"); 2020 Okla. Sess. Law Serv. Ch. 34 (S.B. 1462) (effective October 31, 2020) ("Subject: Unlawful Dissemination of Private Sexual Images"); 2024 Okla. Sess. Law Serv. Ch. 214 (H.B. 3639) (effective November 1, 2024) ("Subject: Crimes and Punishments"); 2025 Okla. Sess. Law Serv. Ch. 23 (H.B. 1364) (going into effect November 1, 2025) ("Subject: Crimes and Punishments"); 2025 Okla. Sess. Law Serv. Ch. 486 (H.B. 2104) (going into effect January 1, 2026) ("Subject: Classification of Felony Offenses"). A review of each amendment shows that the legislature has demonstrated singular interest in criminality. For example, the subject of Senate Bill 1257—the originating statute—was "*Criminal* Conduct Relating to Dissemination of Certain Images[.]" 2016 Okla. Sess. Law Serv. Ch. 262 (emphasis added). Likewise, House Bill 3639 increased the statutory maximum penalty for violators, and House Bill 1364 broadened the illegal conduct at issue to include artificially generated sexual depictions. *See* 2024 Okla. Sess. Law Serv. Ch. 214; 2025 Okla. Sess. Law Serv. Ch. 23.

The legislature has had ample opportunity to explicitly include a state-based private cause of action. It has not done so. Therefore, the statute's history, combined with the text,

demonstrate that § 1040.13b does not confer a private cause of action. Defendant's motion as to this claim is granted.

3. *Claim 3* – Intrusion upon Seclusion

Oklahoma follows the Restatement (Second) of Torts concerning intrusion upon seclusion. *See Guilbeau v. Durant H.M.A., LLC*, 533 P.3d 764, 771 (Okla. 2023). The tort consists of "(1) a nonconsensual intrusion [ ] that (2) was highly offensive to the reasonable person." *Carr v. Oklahoma Student Loan Auth.*, 699 F. Supp. 3d 1241, 1252 (W.D. Okla. 2023) (citing *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 366 (Okla. 1994)).

Defendant argues the Court should dismiss Plaintiff's claim because the complaint alleges only that Defendant accessed photographs from her husband's devices—which Defendant argues is neither intrusive nor unreasonable.

An intrusion "extends to the acquisition of any information to which the general public is not entitled." *Guilbeau*, 533 P.3d at 771. "It may be by … examination into a person's private concerns, as by opening h[er] private and personal mail[.]" *Id.* The "particulars of the interactions between [the parties] leading up to [the intrusion], may well be relevant" and the right is "concerned with people, not [specific] places." *Id.*

The situation here is analogous to an illustration in the Restatement (Second) of Torts in which Person "A" seeks evidence for use in a civil action against Person "B." Restatement (Second) of Torts § 652B (1977). "A" then goes to "B's" bank where he exhibits a forged court order demanding to examine "B's" bank records. Once the bank complies with the forged order, "A has invaded B's privacy." *Id.* In the illustration, the bank is an innocent third party whose protections afford B with a reasonable sense of privacy.

11

Similarly, the complaint alleges that Defendant used stolen passwords to "hack[]" into Mr. Hammons' devices, where she obtained Plaintiff's intimate photographs. Mr. Hammons, like the bank, is an innocent third party whose password-protected devices plausibly provided Plaintiff with a sense of privacy. If the particulars of the marriage were such that the sharing (or hacking) of devices was not an acceptable practice, then it is plausible that Defendant's alleged actions were both intrusive and highly offensive to Plaintiff. Consequently, Plaintiff has sufficiently stated a claim for intrusion upon seclusion.[7]

4. *Claims* 4-5 – Public Disclosure of Private Facts and Intentional Infliction of Emotional Distress

Plaintiff's remaining claims are for (4) public disclosure of private facts[8] and (5) intentional infliction of emotional distress ("IIED").[9]

Defendant asserts that the complaint fails to allege Plaintiff engaged in sufficiently egregious or harmful behavior to justify civil liability under either tort. As the Oklahoma

---

[7] The Court notes a plaintiff may have a claim for intrusion upon seclusion based on the improper use of personal, deeply held, and intimate private objects handled by another. *See Guilbeau*, 533 P.3d at 771-72 (holding a mother had a privacy right in the handling of her miscarried child's remains because "[t]he miscarriage was more personal to [the mother] than to anyone else in the world.").

[8] The public disclosure of private facts requires Plaintiff to allege Defendant's disclosures (1) were highly offensive to a reasonable person, (2) contained private facts about the plaintiff's life, (3) were a public disclosure of private facts, and (4) were not of legitimate concern to others. *Hadnot v. Shaw*, 826 P.2d 978, 985 n.30 (Okla. 1992).

[9] *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 175 (Okla. 2008) ("To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.").

Supreme Court has cautioned, liability should not extend "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986).[10] Defendant further argues Plaintiff failed to allege the requisite intent for IIED.

Adopting all reasonable inferences in the light most favorable to Plaintiff, the Court disagrees with Defendant's arguments. The complaint alleges Defendant disclosed Plaintiff's intimate images to unknown third parties. If true, Defendant's behavior would be sufficiently egregious—as well as sufficiently harmful—to surpass the Oklahoma Supreme Court's concern about the above torts being used to adjudicate commonplace disputes. *See Waterbury v. New York City Ballet, Inc.*, 205 A.D.3d 154, 165 (N.Y. App. Div. 2022) ("We find that the alleged conduct – i.e., the repeated recording and dissemination of intimate images … without [the plaintiff's] knowledge or consent – is extreme and outrageous."); *see also Munley v. ISC Financial House, Inc.*, 584 P.2d 1336, 1338 (Okla. 1992) ("[w]here, under the facts before the court, reasonable persons may differ, it is for [a] jury … to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability.").

Moreover, the complaint alleges Defendant acted with the requisite intent for a claim based on IIED. Accepting the allegations of the complaint, she "hacked" into her husband's

---

[10] For IIED, the test is whether the alleged tortfeasor's conduct "has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress." *Miller v. Miller,* 956 P.2d 887, 901 (Okla. 1998). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.*

13

devices. She then, for the second time, downloaded Plaintiff's intimate images, and—to an unknown extent—disseminated them to third parties. Plaintiff later received unprecedented attention from strangers on social media, corroborating the likely dissemination. Therefore, Defendant's motion as to these claims is denied.

## Conclusion

**IT IS ORDERED** that Defendant's Motion to Dismiss, with Brief in Support [Doc. No. 5] is **GRANTED** in part and **DENIED** in part as set forth herein.

**IT IS SO ORDERED** this 25th day of September, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge